UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
CARMEN SANTOS,                                             :
                                                           :
                              Plaintiff,                   :    **MEMORANDUM**
                                                           :    **DECISION AND ORDER**
              - against -                                  :
                                                           :    17-cv-7583 (BMC)
COMMISSIONER OF SOCIAL SECURITY,                           :
                                                           :
                              Defendant.                   :
---------------------------------------------------------- X

**COGAN**, District Judge.

1. Plaintiff seeks review of the decision of the Commissioner of Social Security, following a remand by the Appeals Council for a second hearing before an Administrative Law Judge, that she is not disabled as defined in the Social Security Act for the purpose of receiving disability insurance benefits and supplemental security income benefits. After the second hearing on remand from the Appeals Council, the ALJ determined that plaintiff had severe impairments of obesity, asthma, sleep apnea, lumbar and cervical radiculitis, bilateral carpal tunnel syndrome, and major depressive disorder and PTSD replaced by dysthymic disorder. Notwithstanding these severe impairments, the ALJ found that plaintiff had sufficient residual functional capacity to perform light work with a number of restrictions. The ALJ's decision was affirmed by the Appeals Council and thereby became the decision of the Commissioner.

2. In this review proceeding, each of plaintiff's points of error is based on the contention that the record was not properly developed. One of plaintiff's points focuses on post-hearing evidence submitted to the Appeals Council. After the ALJ's adverse decision (following the second hearing), plaintiff submitted to the Appeals Council an additional MRI of her spine

and a report about the MRI results from her treating neurologist, Dr. Jasjit Singh. Both the MRI results and Dr. Singh's statement predated the ALJ's (second) decision, but for some unexplained reason, her attorneys (plaintiff was represented throughout the administrative process), had never sought to submit them to the ALJ following the hearing. The Appeals Council ruled that these proposed additions did not "show a reasonable probability" that they would have changed the ALJ's decision.

3. Here, plaintiff stresses the contrast between the MRI that the ALJ did consider and the one that he didn't – the first, from August 20, 2014, showed a normal lumbar spine, while the second, from December 8, 2015, showed S1 nerve root compression with nearby foraminal extension, plus some disc bulges elsewhere. This was particularly important, according to plaintiff, because based on the 2014 MRI and earlier ones, Dr. Singh had acknowledged that he was unable to explain why plaintiff was complaining of such severe back pain: "It is unclear to me how it [sic] would be such a huge discrepancy between [plaintiff's] prior MRIs [and] this one and the amount of pain she is in."

4. The ALJ relied on Dr. Singh's inability to tie the pain to the pre-2015 MRI tests in determining plaintiff's RFC. Moreover, Dr. Singh's inability to explain the amount of pain to which plaintiff professed had a ripple effect on the ALJ's determination – the ALJ found that since there was insufficient objective medical support for plaintiff's claims of pain, her credibility on the subjective manifestation of the pain had to be discounted.

5. However, when Dr. Singh considered the new 2015 MRI in his July 1, 2016 report, his prognosis (at least) changed – he opined that plaintiff required surgery, although he noted that plaintiff declined surgery and would therefore be referred for physical therapy instead.

Plaintiff contends that this changed medical picture required reconsideration of the ALJ's conclusion.

6. In response, the Commissioner alleges inadequacies in Dr. Singh's revised opinion. She notes that Dr. Singh reached a conclusion of unemployability due to plaintiff's back, but that type of expression does not constitute a "medical opinion" under 20 C.F.R. §§ 1527(a)(1), 416.927(a)(1), as it is solely the province of the Commissioner to draw a conclusion of disability.

7. Similarly, the Commissioner argues that Dr. Singh's newly restrictive opinion is inconsistent with his clinical findings. In essence, the Commissioner submits that notwithstanding the 2015 MRI, Dr. Singh's consideration of plaintiff's functional capacity remained the same – normal muscle bulk and tone and full strength, normal gait, and no limit on the ability to walk on heels and toes. Since the ALJ had already found severe back impairments that mandated abstinence from climbing, the 2015 MRI merely confirmed his conclusion.

8. The Commissioner is trying to have it both ways. The ALJ's conclusion about plaintiff's back was based on a normal MRI, conservative treatment, no recommendation for surgery, and a medical expert's opinion that she had no neurological problem in her spine. The new MRI showed serious spinal dysfunction and yielded a treating physician's recommendation for surgery, thus contradicting the medical expert's opinion both objectively and subjectively and undermining the basis for the ALJ's conclusion.

9. I disagree with the Commissioner that Dr. Singh's evaluation of plaintiff's functional capacity was the same post-2015 MRI. A comparison of his reports before and after the 2015 MRI show sharp contrasts. His July 1, 2015 (pre-2015 MRI) report expressed consternation about why plaintiff was professing such severe pain with normal MRIs. That

unusual expression from a treating physician would cause any reasonable ALJ to question her credibility and the actual degree of impairment. Dr. Singh also found in 2015 that plaintiff's spine was "nontender" with a full range of motion, no spasm, negative straight leg raising test, normal muscle bulk and tone, normal sensory responses, and normal gait.

10. In contrast, his January 6, 2016 (post-2015 MRI) report found tenderness and spasm in both her cervical and lower spine. It also found a sensory loss in both of her arms and legs. As the Commissioner points out, she still had normal muscle tone and normal gait, but that, in my view, is not enough to conclude that her functional capacity was the same as Dr. Singh had thought in July 2015. Rather, there seems to be a reasonable probability, as sometimes happens, that plaintiff felt her impairment before the objective tests showed it – but the objective tests (the 2015 MRI) eventually did "catch up" with her complaints and are consistent with them.

11. Thus, by July 2016, Dr. Singh was able to answer his own question posed in July 2015 as to why plaintiff was professing such severe pain in light of then-normal MRIs. Even putting aside, as we should, the conclusion in his 2016 report that plaintiff was unable to work, that later report, supported by the MRI, would likely similarly cause the ALJ to re-examine his own conclusion. The Appeals Council should have remanded it to the ALJ to see if it did.

12. The question was never whether plaintiff had some degree of spinal disease; as the ALJ recognized, her spinal impairment was severe, so of course she did. The question was how severe, and the 2015 MRI shined a whole new light on that issue. Although the question is still for an ALJ, the Appeals Council was incorrect in concluding that there was no reasonable probability that the ALJ might have reached a different result.

13. I reject plaintiff's argument that the ALJ failed to fully develop the record with regard to her foot and ankle injury. Although plaintiff identified the name and address of her

treating podiatrist, Dr. Lady Paula DeJesus, the ALJ never obtained Dr. DeJesus's records. But, as plaintiff conceded, the ALJ was well aware that plaintiff had torn ligaments in her ankle, as another MRI cited by the ALJ confirms.

14. Here, it is plaintiff who is trying to have her cake and eat it too. Both of Dr. Singh's reports – 2015 and 2016 – showed that plaintiff had a normal gait and was able to walk heel to toe. The ALJ therefore had substantial evidence to determine that plaintiff's ambulation was not so severely impaired that she could not perform light work. And this was far from the only evidence showing that plaintiff could ambulate without disabling pain.

15. Moreover, I am persuaded by the Commissioner's argument that although the duty of the ALJ to develop the record is not diminished by the fact that the claimant is represented in the administrative proceedings (as opposed to being *pro se*), it is one factor to consider that the claimant's lawyer never thought that these records were important enough to request. It may well be that the lawyer realized that two normal ambulation reports from plaintiff's treating, board-certified neurologist, plus the other consistent evidence in the record, would eclipse any contrary findings from plaintiff's podiatrist (if they were indeed contrary). The likely immateriality of those records, at least from plaintiff's lawyer's perspective, is further confirmed by the fact that she was represented through two hearings and at no time did plaintiff's representative raise any issue about this, not even when the attorney presented new evidence to the Appeals Council after the second ALJ determination.

16. Finally, I reject plaintiff's claim that the ALJ should have contacted plaintiff's treating pulmonologist, Dr. Vasilios Sierros, and other doctors and therapists who had treated plaintiff's lung conditions. Contrary to plaintiff's implication, the record contains dozens of pages of treatment notes from Dr. Sierros, including his final treatment note. In that note, written

a mere three months before plaintiff's hearing, Dr. Sierros advised plaintiff that he was closing his practice. Thus, it seems almost certain that there were no more records from him to obtain.

17. Moreover, Dr. Sierros's treatment notes are very clear on plaintiff's lung impairments – she has asthma, and likely is post-sarcoidosis or has sarcoidosis in remission – and yet she continues to smoke. When she smokes, and the weather is humid, Dr. Sierros had her use an inhaler if she has discomfort.

18. Plaintiff relies on the testimony of the medical expert during the hearing that although plaintiff's asthma had met a Listing level at one point (at least as to a particular point in time – there is no evidence that the impairment persisted for the duration required for the Listing), he could not conclude that it still did by the time of the hearing because of improvements in her tests. "So that's where we are. Listing level in January 2014 but . . . probable improvement in her sarcoidosis, which was probably [perhaps should be "properly"] treated." What was constraining the medical expert was his inability to tell from the records the current state of plaintiff's current defusing capacity (the rate of transferring oxygen and other gasses into and out of the blood). Plaintiff's argument is that the ALJ should have obtained enough information to put this concern to rest.

19. This wee bit of uncertainty in the medical expert's testimony does not mean there is a "gap" in the record. Plaintiff's primary treating physician was Dr. Serrios, and as noted above, his records were recent. He diagnosed plaintiff with only having asthma (and sleep apnea), and specifically found that although she may have had sarcoidosis in the past, it was "improved' to the point where he did not even list it among plaintiff's active problems. The ALJ had no obligation to proceed on a fishing expedition where the record was so clear.

20. Plaintiff's motion for judgment on the pleadings is granted and defendant's cross-motion is denied. The case is remanded solely for the purpose of having the ALJ consider whether the 2015 MRI results and Dr. Singh's 2016 report warrant reconsideration of plaintiff's application in light of the other evidence in the record.[1]

**SO ORDERED.**

                                                                                      U.S.D.J.

Dated: Brooklyn, New York
       January 23, 2019

---

[1] Although not raised in a separate point, plaintiff has appended to the section on Dr. Serrios two sentences identifying four mental health providers from whom the ALJ did not request records. No argument is offered as to how these records could have affected the result here, and the unsupported reference to the providers buried at the end of the brief point is insufficient to preserve that issue for review. See United States v. Cloud, 680 F.3d 396, 409, n.7 (4th Cir. 2012); United States v. Mitchell, 502 F.3d 931, 953, n.2 (9th Cir. 2007); United States v. Charles, 469 F.3d 402, 408 (5th Cir. 2006); Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001); Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997).